Reese, J.
delivered the opinion of the court.
1st. A preliminary question to bo considered is, whether this cause consisting of bill and cross bill, was so brought to hearing before the chancellor, as that by the rules and course of a court of chancery, he could pass upon the merits and determine the rights of the parties, or whether such irregularity took place, as that this court, upon the appeal, cannot hear the cause, but must remand it to the chancery court? The defendant in the original bill so insists, and he grounds *214 himself upon the following; stale of the case. After the re-plications were filed to the defendants answers to the original and amended bill, and after the dissolution of the injunction, the couri, in May, 1832, “ordered that the cause be set for final hearing at the next term of the court,” and after-wards in October, 1834, the court ordered that the cause be remanded to the rules, with leave to file a cross bill for the benefit of the creditors of Stephen Cocke, deceased. What has been called by the parties on both’sides, and by the chancery court, a cross bill, was filed against the complainant in the names of the defendants in the original bill, and one Stephen Cocke, jun. by his guardian, claiming to be a creditor of the estate of Stephen Cocke, deceased. As to this cross bill, at June rules, 1836, it is entered on the rule docket, “set for hearing exparte for want of answers,” and at the ensuing term of the chancery court, the causes were tried together in the presence of counsel on both sides, and no objection appears to have been made. It is now said, that the original cause ought to have been again set for hearing, and no entry on the rule docket to that effect appears. To this we answer, first, that in the situation in which the cause stood, it was competent for either party to have set it for hearing on the first day of the term; it was competent for them to have heard it by consent, without entry on the rule docket. Again, no proof, in the lapse of four years, was taken by either party, and the case could not have been opened for taking testimony by either side, without very strong and special ground laid by affidavit; no such application was made; no injury, therefore, to the rights of either party was done by hearing it as it stood. 2d. The cause considered by both parties and by the chancery court, as a cross bill, was set for hearing by the complainant in that bill for the want of an answer. A cross bill incorporates itself with the original bill, and must be heard with it. When, therefore, the complainants in the cross bill set it down for hearing, they did an.act, the legal effect of which perhaps was to set down the principal cause also. This consequence certainly resulted so far as consent was necessary to it. In conclusion we will say, that this point has received more attention from *215 die counsel and the court dian its importance merits. It is 1 < % to be hoped this attention, on similar grounds, will not often be exacted. If the cause were remanded, it would be in order that an entry might be made on the rule docket. The attitude of the cause and the rights 'of the parties would not be changed by it. Very different was-the case of Lowry vs. McGhee, 5 Yer. Rep. 238, where the defendants, without a rule for replication, set the cause for heating on bill and answer, making thereby their entire answer testimony in the 'case.
2. The bill alleges that on 16th January, 1816, the complainant purchased a negro woman from one Charles Miles, for the consideration of $300, and took a bill of sale, which is annexed to the bill; that he took her to the house of his father, where he then resided, and continued to reside till 1829, the time of his father’s death. That during that time she had a male child, Daniel. Th'at his father never pretended to set up the least claim to the negroes, and that the defendant, as administrator of his father’s estate, was about to sell them, and an injunction was prayed. An injunction tb restrain the sale was issued. The defendant answers, that the intestate in 1S07 purchased the negro woman from James W. Cocke, and exhibits the bill of sale.
The defendant states in his answer that he is informed and believes the fact to be so, that Miles, under whose bill of sale complainant claims, became possessed of the negro by virtue of some contract with his intestate, and afterwards made the bill of sale to the complainant, then an infant, at the request of said Stephen Cocke, who paid to the said Miles all the consideration which was advanced for said bill of sale. That complainant was then an infant, and could not have by any means paid the consideration. That the bill of sale was in effect a voluntary conveyance'from said Stephen to complainant, and that the said Stephen only intended to give him the negro and her increase, if not necessary to pay debts; that intestate, in his life time, exercised exclusive ownership over the negroes, and in April, 1832, mortgaged the negro woman, to secure a debt of his, and a deed of mortgage is exhibited with the answer, in which one of the *216 negroes mentioned, is of the same name with that in dispute, ° 1 answer also states, that the bill of sale from Maes to complainant has not been registered, and that in the neigb-borbood the intestate was regarded as the owner of the ne-groes and obtained credit on that ground. That intestate, on 17th January, 18Í6, before the date of the bill of sale to complainant, as the answer expressly alleges, became executor of- Cocke, deceased, and that since his death judgment has been obtained against respondent, for his default as executor. That the bill of sale to complainant, he is advised, is fraudulent against creditors, and that he was about to sell said negroes when enjoined. This answer is replied to, and no proof whatever is taken in the case, nor other proceeding materially varying the rights of the parties, as shown in this bill and answer. In this state of the case, what are the legal consequences necessarily resulting? 1st. The answer admits the bill of sale from Miles to the complainant, exhibited with the bill, states that Miles by contract with Stephen Cocke, was possessed of the negro, and conveyed her to the complainant, states that defendant being an infant,' had no means to purchase, and alleges that the consideration was advanced by Stephen Cocke to Miles, and was intended as a gift, if not necessary to pay debts. Now this allegation of the consideration having been paid by Stephen Cocke, is not responsive to any charge or interrogatory in the bill, and the answer being replied to, and there being no proof in the cause, the court are not permitted to infer the fact from the tender years of the complainant, who, notwithstanding that, might have had ample means. The presumption is, that the consideration passes, as the deed imports, from the ven-dee to the vendor. There is nothing shown to prove the contrary. If then, as must be presumed, the consideration was paid by the complainant to Miles, who, as the answer states, was possessed of the negroes by contract with Stephen Cocke, all other questions in the case are at an end, as the complainant has a deed from Miles, which although unregistered is valid, there being no creditors of Miles objecting thereto. This view is decisive of the whole case, and as it presents itself in limine and cannot be obviated, it is useless *217 and perhaps hardly proper to determine other points which i \ ,. , ., . , ... „ n , • . have been discussed with much ability, borne or these , . , . , , a , . . would bring us to the same result. As to the remedy given by the chancellor, it is objected, 1st, that the decree is rendered against him personally, although he is sued as administrator. He is called administrator indeed in the bill, because he assumed by virtue of that character, without legitimate power derived from his office, to inflict a wrong upon the property of complainant, by selling and disposing of it. The bill states the facts upon which liis liability arises; they make him personally responsible. 2d. It is objected that the bill was filed to recover the negroes specifically, and the decree is for their value, hire, &c. The complainant is now entitled to have the negroes specifically delivered to him, and if the defendant can do so he certainly may. But the cross bill, filed by defendant in 1834, states, that before that time he had sold tho negroes, and therefore, if the complainant is willing to accept their value, defendant cannot object. The actual delivery of the negroes cannot be imposed upon the defendant under the circumstances, as the court dissolved the injunction and permitted a sale 3d. It is said, annual rests, as to the hire is decreed, and that this is harsh and unusual. We suppose that nothing more is meant by the decree than to ascertain the hire of each year, and for the sum due for hire at the end of each year, to give interest to the time of taking the account. This is proper. If it be intended to compound the interest at the end of each year, by adding it to the principal, we do not agree to such course, and would reform the decree in that respect, but we put the first named construction upon the decree.
Decree affirmed.